```
        IN THE UNITED STATES DISTRICT COURT
       FOR THE WESTERN DISTRICT OF TENNESSEE
                  WESTERN DIVISION
```
_____

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )  No. 17-cr-20172-SHL |
| | ) |
| **JOSEPH REID,** | ) |
| | ) |
|     Defendant. | ) |
| | ) |

_____

## REPORT AND RECOMMENDATION
_____

Before the court by order of reference is defendant Joseph Reid's Motion to Suppress Evidence, filed on January 5, 2018. (ECF No. 18)  The government filed a response on January 16, 2018, and a supplement to its response on January 29, 2018.  (ECF Nos. 20 & 22.)  The parties appeared before the court for an evidentiary hearing on January 30, 2018.  (ECF No. 23.)  For the following reasons, it is recommended that Reid's motion be denied.

### I.   PROPOSED FINDINGS OF FACT

The following proposed findings of fact are based upon the testimony of the three police officer witnesses who testified at the evidentiary hearing, all of whom the court finds to be credible.

At around 5:00 p.m. on November 30, 2016, Lieutenant Andre Pruitt of the Memphis Police Department ("MPD") was conducting an enhanced patrol of the Douglas neighborhood of Memphis, Tennessee.

(ECF No. 27 at 12.)  According to Lieutenant Pruitt, he was directed to patrol that neighborhood because it was a high-crime area well known for drugs and shootings.  (Id. at 13; 19.) Lieutenant Pruitt, who was driving an unmarked police vehicle, was parked across the street from 3118 Chelsea Avenue, when he observed a group of black men standing outside of a vacant building next door to a convenience store.  (Id. at 13-14; 20.)  Lieutenant Pruitt observed the men "loitering," walking back and forth between the store and the vacant building next door.  (Id. at 13-14.) Lieutenant Pruitt was aware that behind the store was a known "drug house" that MPD officers had been to numerous times over the past year.  (Id. at 13-14.)  After about twenty minutes of observing the men, Lieutenant Pruitt called for additional officers to come to the scene and attempt to initiate a consensual encounter with the men to find out why they were loitering on the lot and, if possible, to check for any outstanding warrants.  (Id. at 15.) When the officers drove past the store in marked squad cars, the group of men "scattered" in different directions.  (Id. at 16.)

As the police cars drove by, Lieutenant Pruitt observed one of the men, later identified as defendant Joseph Reid, quickly enter the store.  (Id. at 16; 17-18; 31.)  Lieutenant Pruitt exited his vehicle and followed Reid into the store.  As Lieutenant Pruitt approached Reid inside the store, he noticed the smell of marijuana emanating from Reid's person.  (Id. at 17; 31.)  There were

-2-

"[m]aybe two" other people inside the store besides Reid when Lieutenant Pruitt entered. (Id. at 31.) Lieutenant Pruitt then escorted Reid out of the store and turned him over to Detective Cody Mills, who had arrived at the store to provide support. (Id. at 17-18; 32.) Detective Mills also noticed a strong smell of marijuana coming from Reid's person. (Id. at 82-82.) Detective Mills handcuffed Reid for his own safety, walked Reid to his squad car, and conducted a pat down. (Id.) Lieutenant Pruitt testified that, based on his experience, individuals involved in drug trafficking sometimes carry firearms, and that was one of the reasons for the pat down. (Id. at 18-19.) Detective Mills found a handgun, two bags of marijuana, two pills believed to be Xanax, and $196 in cash on Reid's person. (Id. at 58.) Reid was later indicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (ECF No. 1.)

## II.   PROPOSED CONCLUSIONS OF LAW

### A.   Legal Standard

The Fourth Amendment provides, in part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. "A warrantless search or seizure is 'per se unreasonable under the Fourth Amendment - subject only to a few specifically established and well-delineated exceptions.'" United States v. Roark, 36 F. 3d 14, 17 (6th Cir.

1994) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)). "[T]here are three types of permissible encounters between police and citizens: consensual encounters in which contact is initiated by a police officer without any articulable reason whatsoever and the citizen is briefly asked questions; a temporary involuntary detention or Terry stop, which must be predicated upon 'reasonable suspicion;' and arrests which must be based on probable cause." United States v. Alston, 375 F.3d 408, 411 (6th Cir. 2004) (quoting United States v. Bueno, 21 F.3d 120, 123 (6th Cir. 1994)).

Under the first type of permissible encounter, officers may approach and ask citizens basic questions without implicating the Fourth Amendment. See Bennett v. City of Eastpointe, 410 F.3d 810, 821 (6th Cir. 2005). It is only when an officer restrains an individual's liberty "by means of physical force or show of authority" that Fourth Amendment protections attach. Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968). A person's liberty is restrained if a reasonable person in the circumstances would not believe that he were free to leave and ignore the officer's requests. See Bennett, 410 F.3d at 821 (citing United States v. Mendenhall, 446 U.S. 544, 554 (1980)).

Under the second type of permissible encounter, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable articulable suspicion that criminal activity is afoot." Wardlow, 528 U.S. at

-4-

Case 2:17-cr-20172-SHL   Document 30   Filed 03/06/18   Page 5 of 14    PageID 183

Case 2:17-cr-20172-SHL   Document 30   Filed 03/06/18   Page 5 of 14    PageID 183

123 (citing Terry, 392 U.S. at 31). The constitutionality of a Terry stop is evaluated by a two-step analysis: first, there must be a proper basis for the stop; second, the degree of intrusion must be reasonably related in scope to the situation at hand. United States v. Davis, 514 F.3d 596, 608 (6th Cir. 2008). To be constitutionally proper, a Terry stop must

> be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity . . . the totality of the circumstances - the whole picture - must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.

United States v. Cortez, 449 U.S. 411, 417-18 (1981); see also District of Columbia v. Wesby, 138 S. Ct. 577, 588, (2018); United States v. Arvizu, 534 U.S. 266, 273 (2002) ("When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing."). During a Terry stop, an officer may frisk a citizen for weapons if the officer has reason to believe that the individual is armed and dangerous. Terry, 392 U.S. at 27; see also Knowles v. Iowa, 525 U.S. 113, 118 (1998).

Reid contends that the Terry stop, which began when Lieutenant Pruitt grabbed Reid inside the store, was unconstitutional because it was not supported by a reasonable articulable suspicion that

-5-

criminal activity was afoot. (ECF No. 27 at 100-01.) Reid submits that Lieutenant Pruitt's suspicion consisted solely of the facts that (1) Lieutenant Pruitt observed him standing idle in front of a vacant building with some other individuals and (2) Reid moved into the store next door when a marked police car drove by. Reid argues that these facts are insufficient, under a totality of the circumstances analysis, to provide a sufficient basis for a Terry stop. (Id. at 101-05.) Thus, Reid requests that the court suppress all evidence obtained as a result of the seizure. (ECF No. 18 at 7.)

In response, the government asserts that in addition to the facts cited above by Reid, the high crime area in which the events occurred and the smell of marijuana emanating from Reid's person must also be considered under the totality of the circumstances. (ECF No. 27 at 109-10.) The government argues that these facts were sufficient to provide the officers with justification to conduct a Terry stop, i.e., a reasonable articulable suspicion that criminal activity was afoot. (Id. at 109-11.)

**B.   When the Terry Stop Began**

This court must initially determine when the Terry stop began, prior to analyzing its propriety. See United States v. Thomas, 77 F. App'x 862, 864 (6th Cir. 2003). "A consensual encounter can ripen into a seizure if 'in light of all of the circumstances, [] a reasonable person [would] have believed that he or she was not free

to walk away.'" United States v. Foster, 376 F.3d 577, 586 (6th Cir. 2004) (quoting United States v. Grant, 920 F.3d 376, 382 (6th Cir. 1990)) (internal quotations omitted).  "Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Mendenhall, 446 U.S. at 554.  The court finds that a Terry stop commenced when Lieutenant Pruitt, after following Reid inside the store and smelling marijuana on his person, grabbed Reid and escorted him outside. (ECF No. 27 at 100.)  At that point, physical contact was initiated and Reid would not have believed he was free to leave or ignore any requests from the officers.  See Mendenhall, 446 U.S. at 554; Bennett, 410 F.3d at 821.  Thus, the court will analyze whether a proper basis for a Terry stop existed at that moment in time.

**C.   Whether a Proper Basis Existed for the Terry Stop**

To determine whether there was a proper basis for the stop, a court must examine "whether the law enforcement officials were aware of specific and articulable facts which gave rise to reasonable suspicion." United States v. See, 574 F.3d 309, 313 (6th Cir. 2009) (internal quotations omitted).  "The officer must be able to articulate something more than an inchoate and

-7-

unparticularized suspicion or hunch." United States v. Gross, 662 F.3d 393, 399 (6th Cir. 2011) (citations and internal quotation marks omitted). "Officers are entitled 'to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" United States v. Lyons, 687 F.3d 754, 763 (6th Cir. 2012) (quoting Arvizu, 534 U.S. at 273)). "Pertinent circumstances include the officer's own direct observations, dispatch information, directions from other officers, and the nature of the area and time of day during which the suspicious activity occurred." United States v. Campbell, 549 F.3d 364, 370-71 (6th Cir. 2008) (internal citations omitted). The totality of the circumstances is examined in order to determine the reasonableness of the investigatory stop. Davis, 514 F.3d at 608. Numerous facts can weigh upon this "contextual consideration," including: the crime level of the area, see Illinois v. Wardlow, 528 U.S. 119, 124 (2000); the time of day, see United States v. Caruthers, 458 F.3d 459, 467-68 (6th Cir. 2006); and fleeing or seeking to evade an encounter with police, see Graham v. Connor, 490 U.S. 386, 396 (1989).

Numerous Courts of Appeals have held that the odor of marijuana, if sufficiently localized to a specific person, may provide not only reasonable suspicion, but probable cause to arrest

that person for the crime of marijuana possession.[1]  See, e.g., United States v. Paige, 870 F.3d 693, 700 (7th Cir. 2017); United States v. Perdoma, 621 F.3d 745, 749 (8th Cir. 2010); United States v. Ramos, 443 F.3d 304, 308 (3d Cir. 2006); United States v. Humphries, 372 F.3d 653, 659-60 (4th Cir. 2004).  In the context of a Terry stop, several courts have concluded that the smell of marijuana emanating from a person can support an officer's reasonable suspicion that the person is engaged in criminal activity.  See United States v. Cartwright, 183 F. Supp. 3d 1348, 1355-57 (M.D. Ga. 2016) (finding that officers' testimony of smelling the "pungent" odor of marijuana on a person established an objective, reasonable suspicion to justify a Terry stop); United States v. Lima, Criminal Action No. 2012-010, 2012 WL 4371830, at *4 (D.V.I. Sept. 25, 2012) (finding that where officers smelled marijuana smoke when approaching group of three men, source of odor was sufficiently particularized and totality of the circumstances – including presence in a high crime area - demonstrated that a Terry stop was justified); United States v. Johnson, Criminal Action 06-74-JJF, 2007 WL 981607, at *3 (D. Del. Mar. 30, 2007) (finding that smell of freshly burnt or burning marijuana in an alleyway where only one person was present provided a reasonable suspicion to conduct an investigative stop); see also United States v. James, 575 F. App'x 636, 640 (6th Cir. 2014) (concluding that odor of

---

[1]Possession of marijuana is a crime under Tennessee state law.  See

marijuana on defendant's person justified search of vehicle from which defendant had recently exited after no marijuana was found on his person).

Here, the totality of the circumstances demonstrates that a proper basis existed for the Terry stop.  First, Lieutenant Pruitt and Detective Mills testified that their encounter with Reid occurred in a high-crime area known for drug sales and shootings generally, and specifically in close proximity to a known drug house that MPD officers had investigated numerous times in the past year.  While an individual's presence in an "area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime," a location's characteristics are relevant in "determining whether the circumstances are sufficiently suspicious to warrant further investigation."  Wardlow, 528 U.S. at 124.

Second, both Lieutenant Pruitt and Detective Mills testified that they observed multiple individuals, including Reid, scatter at a fast pace when Detective Mills's marked police car drove past the convenience store.  Such conduct may likewise be considered under a totality of the circumstances analysis.  See Wardlow, 528 U.S. at 124-25; see also Graham, 490 U.S. at 396.  Third, and most importantly, Lieutenant Pruitt testified that he smelled the odor of marijuana emanating from Reid's person as he approached Reid

---

TENN. CODE ANN. § 39-17-418(a).

inside the store.² Thus, Lieutenant Pruitt had, at least, a reasonable articulable suspicion that Reid was involved in drug activity. See Cartwright, 183 F. Supp. 3d at 1355-57; Lima, 2012 WL 4371830, at *4; Johnson, 2007 WL 981607, at *3. The totality of the circumstances – the area in which the encounter occurred, Reid's evasiveness when marked police cars approached, and the smell of marijuana on Reid's person - provided the officers with a proper basis to conduct a Terry stop.³

**D.   Whether the Degree of Intrusion was Proper**

During the course of an otherwise proper Terry stop, an officer may frisk the suspect to ensure officer safety when officers have a reasonable suspicion that the suspect has a weapon. See United States v. Ybarra, 444 U.S. 85, 93 (1979); United States v. Bearden, 213 F. App'x 410, 415 (6th Cir. 2007); see also United States v. Stennis, 475 F. App'x 494, 501 (6th Cir. 2012) ("'When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' a limited protective search may be conducted for the purpose of discovering any concealed weapons.") (quoting Adams v. Williams, 407 U.S. 143,

---

²Lieutenant Pruitt's testimony was corroborated by Detective Mills, who testified that he detected a strong smell of marijuana coming from Reid's person when he later encountered Reid outside of the store.

³Based on this finding, the court need not decide whether the officers also had probable cause to arrest Reid based solely on

-11-

146 (1972)). "An officer's reasonable belief that someone is involved in drug dealing can support a suspicion that the person is armed and dangerous since weapons are often present incident to the drug business." United States v. Binion, 570 F.3d 1034, 1039 (8th Cir. 2009) (finding protective frisk justified where officer smelled marijuana in car, driver of car had apparently been trying to hide something under front seat, driver had outstanding warrant and was speeding at 2 a.m.); see also United States v. Anderson, 859 F.2d 1171, 1177 (3d Cir. 1988) (finding pat down search appropriate where officer observed large bag of cash in front seat of car and, suspecting it to be drug money, conducted search of car's occupants because "persons involved with drugs often carry weapons").  A frisk must be "reasonably related in scope to the situation at hand," Davis, 514 F.3d at 608, and, provided the officers' search stays within these bounds, nonthreatening contraband recovered during a protective pat down may likewise be seized.  Minnesota v. Dickerson, 508 U.S. 366, 373 (1993). Furthermore, the use of handcuffs does not automatically transform a Terry stop into an arrest, provided that the display of force is warranted by the circumstances – specifically when officer safety is at issue.  See Smoak v. Hall, 460 F.3d 768, 781 (6th Cir. 2006); Houston v. Clark Cnty. Sheriff Deputy John Does 1–5, 174 F.3d 809, 814 (6th Cir. 1999) (holding that forcing suspects from their cars

---

this information.

at gunpoint, handcuffing them, and placing them into a cruiser did not exceed the bounds of Terry because the officers had a "reasonabl[e] fear that [the] suspects [were] armed and dangerous"); see also Radvansky v. City of Olmsted Falls, 395 F.3d 291, 309 (6th Cir. 2005) (finding handcuffing reasonable where burglary suspect was reasonably deemed armed and dangerous).

There is no indication that the conduct of either Lieutenant Pruitt or Detective Mills was unreasonable given the situation at hand. Based on the officers' testimony regarding the area in which the encounter occurred, Reid's flight, the smell of marijuana coming from his person, and the officers' own experience and knowledge concerning the likelihood that individuals engaged in drug trafficking sometimes carry firearms, it was reasonable for the officers to believe that Reid might be involved in drug activity and thus might be armed. A limited frisk of his person to ensure officer safety was therefore within the proper scope of the Terry stop.

### III. RECOMMENDATION

For the above reasons, it is recommended that Reid's motion to suppress evidence be denied.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

March 6, 2018
Date

-13-

**NOTICE**

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**