# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>JOSEPH REID,<br><br>    Defendant. | No. 2:17-cr-20172-SHL-1 |

## ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Before the Court is Joseph Reid's ("Defendant") Motion to Suppress Evidence and Supporting Memorandum of Law, filed January 5, 2018. (ECF No. 18.) The Court referred the Motion to Magistrate Judge Pham for Report and Recommendation on January 9, 2018. (ECF No. 19.) The Government filed its Response in Opposition on January 16, 2018 (ECF No. 20), and a supplemental response on January 29, 2018 (ECF No. 22). Magistrate Judge Pham held an evidentiary hearing on January 30, 2018.

On March 6, 2018, Magistrate Judge Pham issued a Report and Recommendation (the "Report"), recommending that the Motion be denied. (ECF No. 30.) Defendant filed objections to the Report on March 20, 2018, arguing that Magistrate Judge Pham made errors in both his findings of fact and his conclusions of law. (ECF No. 31.) Thereafter, pursuant to Local Rule 72.1(g) and the Court's Order Directing Government to Respond (ECF No. 32), the Government filed a Response to Plaintiff's Objections on April 9, 2018 (ECF No. 33). As is more fully articulated herein, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation and **DENIES** Defendant's Motion to Suppress Evidence.

# FACTS

On June 29, 2017, the Grand Jury returned an indictment charging Defendant with one count of being a felon in possession of a firearm. (ECF No. 2.) At the evidentiary hearing on this Motion, the Government called as witnesses two officers with the Memphis Police Department, Lieutenant Andre Pruitt and Detective Cody Mills. Defendant called one witness, Detective Victoria Edwards, also of the Memphis Police Department. The events surrounding the arrest are recounted below, based on the testimony at that hearing. (See Mot. to Suppress Hr'g Tr., ECF No. 27.)

At around 5:00 p.m. on November 30, 2016, Memphis police officers were performing an enhanced patrol in the Douglas neighborhood of Memphis, Tennessee, a neighborhood described by both Lieutenant Pruitt and Detective Mulls as "high crime." (Id. at 12, 19, 25, 61.) As part of the enhanced patrol, Lieutenant Pruitt stated that he surveilled certain areas in an unmarked police car while several other officers in marked cars remained in the vicinity. (See id. at 15, 19, 23.) During his patrol, Lieutenant Pruitt noticed four men loitering in a vacant lot near a corner store on Chelsea Avenue. (Id. at 12–14.) Pruitt testified that the men were going back and forth between buildings adjoining the lot. (Id. at 14.) He also testified that there is a drug house behind the store and that he had made previous drugs arrests in that area. (Id.)

After observing the four loiterers for approximately twenty minutes, Lieutenant Pruitt called the officers in marked police cars to come and conduct a consensual encounter. (Id. at 15, 20.) According to both Lieutenant Pruitt and Detective Mills, when the officers arrived on the scene in the marked cars, the loiterers "scattered," and Defendant "walked quickly" or jogged into the corner store. (Id. at 16, 44, 77.) Lieutenant Pruitt followed Defendant into the store and smelled marijuana as he approached Defendant. (Id. at 17.) He then grabbed Defendant, walked

2

him out of the store and passed him off to Detective Mills. (Id. at 17–18.) Pruitt stated that he removed Defendant from the store so that Defendant did not think that the store owner coordinated with the police and so that business inside the store could resume. (Id. at 48.) Pruitt also testified that, in his experience, people involved in drug trafficking sometimes carry firearms. (Id. at 19.)

Detective Mills testified that, "as soon as [Defendant] walked outside, [Mills] smelled a very strong odor of marijuana coming from [Defendant]." (Id. at 53.) Upon receiving Defendant from Lieutenant Pruitt, Mills tried to talk with him, but Defendant did not respond to the questions. (Id. at 57.) Mills testified that Defendant was "nervous and shaky" and began looking "left and right, as if he was looking for an . . . escape route . . ." when Mills asked him to turn around to be patted down. (Id.) Because of Defendant's conduct and the smell of marijuana, Mills handcuffed Defendant for officer safety before patting him down. (Id. at 57–58.) Mills also stated that, in his experience, people who deal drugs sometimes carry firearms. (Id. at 60–61.) During the pat down, Mills found a handgun, a large bag of marijuana, two pills and one hundred ninety-six dollars in cash. (Id. at 58.) Defendant was then arrested and now seeks to suppress the gun found during the search.

## ANALYSIS

A magistrate judge may submit to a judge of the court proposed findings of fact and recommendations for certain pre-trial matters. 28 U.S.C. § 636(b)(1)(B). "Within 14 days after being served with a copy of the recommended disposition, . . . a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Crim. P. 59(b)(2); see also 28 U.S.C. § 636(b)(1). A district court reviews *de novo* only those proposed findings of fact or conclusions of law to which a party specifically objects. 28 U.S.C. § 636(b)(1); see also

Fed. R. Crim. P. 59(b)(3). "A general objection that does not identify specific issues from the magistrate's report is not permitted because it renders the recommendations of the magistrate useless, duplicates the efforts of the magistrate, and wastes judicial economy." Johnson v. Brown, 2016 WL 4261761, at *1 (E.D. Kent. August 12, 2016) (citing Howard v. Sec'y of Health and Human Servs., 932 F.2d 505, 509 (6th Cir. 1991)). After reviewing the evidence, the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Defendant appears to object to the Report on two grounds. First, Defendant objects to Magistrate Judge Pham's factual findings based on Lieutenant Pruitt's testimony. (ECF No. 31 at 2.) Second, Defendant objects to Magistrate Judge Pham's legal conclusion that Lieutenant Pruitt and Detective Mills conducted a proper Terry stop. (Id. at 4–7.) The Court addresses Defendant's objections in turn.

I.  **Factual Findings**

First, Defendant states that he objects to Lieutenant Pruitt's testimony being found "persuasive." (Id. at 2.) Defendant's diction leaves the Court unclear as to whether he is challenging Judge Pham's finding that Lieutenant Pruitt's testimony was credible or Judge Pham's ultimate factual conclusions based on Pruitt's testimony. Therefore, the Court addresses both.

Defendant's first collection of objections concerns Judge Pham's conclusion that Lieutenant Pruitt observed men loitering and milling about between vacant buildings before he called the officers in marked cars. (Id. at 2.) Specifically, Defendant argues that Pruitt testified that he did not see anyone walk toward the known drug house or see any drug transactions take place. (Id.) Instead, according to Defendant, Pruitt testified that he saw people and cars coming

4

and going but no suspicious activity. (Id. at 2–3.) Thus, Defendant argues that Pruitt merely saw a group of men gathered between two buildings, but nothing more. (Id. at 3.)

Next, Defendant seems to object to Judge Pham's finding that Lieutenant Pruitt apprehended the correct person. Defendant avers that the store contained three people, but Pruitt simply grabbed Defendant without questioning the other people inside. (Id.)

Lastly, Defendant objects to Judge Pham crediting Lieutenant Pruitt's testimony that a pat down was justified. (Id. at 3.) Defendant contends that there was no reason that Lieutenant Pruitt should have feared for his safety because there was no testimony of suspicious drug activity, which "is usually described as 'furtive movement, hand exchanges, just back and forth action on the lot, cars pulling up possibly, individuals walking up to individuals and making hand exchanges.'" (Id.)

To begin, the Court concurs with Judge Pham that Lieutenant Pruitt's testimony was credible. "When reviewing a magistrate judge's credibility determinations on a motion to suppress, the district court may accept or reject the magistrate judge's determinations, while recognizing a magistrate judge is in the better position to assess the credibility of witnesses he sees and hears." United States v. Green, No. 2:15-cr-20078-JPM-dkv, 2016 WL 29640, at *3 (W.D. Tenn. Jan. 4, 2016) (quoting United States v. Johnson, No. 10-20176, 2011 WL 3844194, at *2 (W.D. Tenn. Aug. 30, 2011)); see also United States v. Irorere, 69 Fed. App'x 231, 236 (6th Cir. 2003). "Credibility determinations of the magistrate judge who personally listened to the testimony of a witness should be accepted by a district judge unless in his de novo review of the record he finds a reason to question the magistrate judge's assessment." Green, 2016 WL 29640, at *3 (quoting Johnson, 2011 WL 3844194, at *2).

The Court recognizes that Judge Pham was in the best position to make a credibility determination as to Lieutenant Pruitt's testimony, and the record contains no reason to question his assessment. Notably, Pruitt's testimony was consistent with all of the other officers' testimony, and the Court finds no reason to doubt them.

As to Defendant's argument that Lieutenant Pruitt did not see any suspicious activity before initiating the Terry stop, the Court disagrees. Lieutenant Pruitt testified that the neighborhood in which he observed the men was known for "drugs and shootings." (ECF No. 27 at 13.) In fact, he testified that they had been working in that area for a week and that he had arrested other individuals at that very location. (Id. at 45.) While Lieutenant Pruitt did not testify that he saw the men enter or exit the known drug house, he testified that the men were loitering in a vacant lot near the drug house and that they were going back and forth between buildings. (Id. at 14.) Additionally, Lieutenant Pruitt saw the loiterers flee when the police arrived—a fact that Defendant does not address. (Id. at 16–17.) Therefore, when considering the larger context, the Court finds that Lieutenant Pruitt observed considerably more than four individuals gathered in front of two buildings, as argued by Defendant. As will be discussed further below, he noticed suspicious activity sufficient to initiate a Terry stop.

Next, to the extent Defendant alleges that Lieutenant Pruitt possibly grabbed the wrong person inside the store, the Court is unpersuaded. Pruitt entered the store very soon after the loiterer entered it, and Detective Mills testified that the person Pruitt removed from the store was wearing the same clothes as one of the loiterers. (Id. at 16–17, 75.)

Finally, as to Defendant's argument that Lieutenant Pruitt did not articulate legitimate reasons that gave him reason to fear for his safety, the Court, again, disagrees. First, the loiterers were in a neighborhood known for its high crime, including drugs and shootings. (Id. at 13.)

Second, Lieutenant Pruitt had made other arrests at or near that very location in the week preceding his encounter with Defendant. (Id. at 45.) Additionally, Defendant fled when the marked police cars arrived, and Pruitt smelled marijuana emanating from Defendant when Pruitt approached him. (Id. at 16–17.) Finally, both Lieutenant Pruitt and Detective Mills testified that, in their experience, people involved in drug trafficking sometimes carry firearms. (Id. at 19, 61.) Therefore, the Court finds that Lieutenant Pruitt testified to specific facts that could be interpreted as signs of drug trafficking and thus the record supports that Lieutenant Pruitt could have feared for his safety.

Based on the above, Defendant's Objections to Magistrate Judge Pham's factual findings are **OVERRULED**.

## II. Conclusions of Law

Defendant objects to the Terry stop on multiple legal grounds. Initially, Defendant asserts that Lieutenant Pruitt did not have a particularized and objective basis for commencing a Terry stop. (ECF No. 31 at 4.) Next, in the alternative, Defendant submits two arguments that the officers' conduct exceeded the degree of intrusion allowed in a Terry stop. (Id. at 5–7.) The Court addresses Defendant's arguments seriatim.

### A. Basis for the Stop

Defendant contends that, immediately before the seizure, Lieutenant Pruitt had observed four individuals standing in a vacant lot near a corner store, which is not a suspicious activity. (Id. at 4.) Then, when the marked police cars arrived, according to Defendant, Lieutenant Pruitt saw him enter the corner store and "just went in there and got him." (Id. at 4.) Thus, Defendant asserts that, because Lieutenant Pruitt had only observed four men loitering and "the evasiveness

7

of [Defendant]," Pruitt's testimony amounted to "inchoate and unparticularized suspicion," which is insufficient to support a Terry stop. (Id. at 4–5.)

To initiate a Terry stop, an officer must have "'reasonable, articulable suspicion that a person has been, is, or is about to be engaged in criminal activity.'" Srisavath v. City of Brentwood, 243 Fed. App'x 909, 913 (6th Cir. 2007) (quoting United States v. Hensley, 469 U.S. 221, 227 (1985)). This reasonable suspicion standard "requires more than a police officer's hunch that criminal activity is afoot. Instead, the officer must be able to point to 'specific and articulable facts that, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" Id. (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)). In determining whether reasonable suspicion existed for a stop, courts consider the totality of the circumstances. See United States v. Cortez, 449 U.S. 411, 417–18 (1981).

Here, Judge Pham found that the Terry stop began when Lieutenant Pruitt grabbed Defendant inside the store. (ECF No. 30 at 7.) Defendant does not challenge that determination, and the Court does not find it to be clearly in error. See United States v. Mendenhall, 446 U.S. 544, 554 (1980) ("We conclude that a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."). Therefore, the question is whether Lieutenant Pruitt had reasonable suspicion to seize Defendant inside the store. The Court finds that he did.

By the time Lieutenant Pruitt grabbed Defendant, he had observed four individuals loitering in a vacant lot in a neighborhood that both he and Detective Mills described as high crime. See Illinois v. Wardlow, 528 U.S. 119, 124 (2000) ("[W]e have previously noted the fact that the stop occurred in a 'high crime area' among the relevant contextual considerations in

8

a Terry analysis."). Even more specifically, the men were loitering near a known drug house, and they quickly scattered when marked police cars arrived. Id. at 125 (holding that unprovoked flight is a factor to be considered in determining whether there was reasonable suspicion to effect a Terry stop); see also United States v. Carter, 558 Fed. App'x 606, 611 (6th Cir. 2014). Finally, and, according to Judge Pham, most importantly, Pruitt smelled marijuana emanating from Defendant before seizing him. United States v. Foster, 376 F.3d 577, 586 (6th Cir. 2004) ("[T]he fact that [the defendant] smelled of PCP, an illegal substance, alone warrants the officers detaining him to investigate the situation further."). Under the totality of the circumstances, the Court concurs with Judge Pham that Lieutenant Pruitt pointed to specific and articulable facts supporting reasonable suspicion that Defendant had been or was about to be engaged in illegal activity. Therefore, Defendant's objection that there was no reasonable basis to initiate a Terry stop is **OVERRULED**.

**B.  Degree of the Intrusion**

Alternatively, Defendant submits two arguments challenging the degree of the intrusion of the Terry stop. (ECF No. 31 at 5–7.) Defendant begins by arguing that, even if there was reasonable suspicion to initiate the stop, Defendant's detainment actually amounted to a custodial arrest.[1] Defendant contends that "the nature and degree of the intrusion [during a Terry stop must be] reasonably related in scope to the situation at hand," and the scope here could only amount to a brief detention to inquire about loitering, Defendant's evasiveness and possible drug possession. (Id. at 5 (citing United States v. Garza, 10 F.3d 1241, 1245 (6th Cir. 1993).)

---

[1] It is unclear whether Defendant objects only to Lieutenant Pruitt's conduct or whether he objects to Detective Mills's conduct as well. (See ECF No. 31 at 5 ("[T]he actual conduct by Pruitt extended significantly beyond the limited investigative detention authorized by [sic] to a full, custodial arrest accomplished by grabbing him and taking him outside where he was then handcuffed and patted down by Detective Mills.").) Therefore, the Court will analyze the acts of each in determining whether the scope of the Terry stop was exceeded.

Instead, though, Defendant argues that Lieutenant Pruitt grabbed him inside the store without questioning him, escorted him outside and Detective Mills handcuffed him. (Id.) Thus, Defendant's position is that the officers exceeded their permissible scope under Terry, thereby transforming the initial stop into a custodial arrest. (Id.)

Next, again assuming arguendo that a proper basis for the stop existed, Defendant argues that the officers did not have a legal basis to frisk him. (Id. at 6.) Defendant contends that there must be additional specific facts to support a frisk; additional facts that are lacking here. (Id.) First, Defendant asserts that there is no evidence that he was a flight risk or that he posed a danger to the officers. (Id.) Second, Defendant argues that Detective Mills observing Defendant on the vacant lot and smelling marijuana on his person do not give rise to reasonable suspicion that Defendant was dangerous. (Id.) Third, Defendant seems to argue that his refusal to answer Detective Mills's questions was not suspicious because, immediately prior to the questioning, Lieutenant Pruitt "had control over him." (Id.) Finally, Defendant spends considerable effort arguing that this matter is directly analogous to United States v. Noble, 762 F.3d 509 (6th Cir. 2014), where, Defendant argues, the Court held that, without more, the frisk of a nervous passenger in a car suspected to be connected to drug trafficking was improper. (Id. at 6–7.)

In his Report, Judge Pham determined that the officers' conduct did not exceed the permissible scope of a Terry stop. (ECF No. 30 at 13.) The Court agrees with his conclusion.

In a Terry stop,

> "[t]he 'scope of the intrusion permitted' . . . 'will vary . . . with the particular facts and circumstances of each case,' but in all cases the 'detention must be temporary and last no longer than is necessary'" and "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time."

Bennett v. City of Eastpointe, 410 F.3d 810, 836 (6th Cir. 2005) (quoting Florida v. Royer, 460 U.S. 491, 500 (1983)). In other words, "[a] Terry stop must not only be justified at its inception,

10

but also 'must be reasonably related in scope to the circumstances which justified the interference in the first place.'" United States v. Campbell, 549 F.3d 364, 372 (6th Cir. 2008) (quoting United States v. Blair, 524 F.3d 740, 750 (6th Cir. 2008)). "The propriety of the intrusion is judged by examining the reasonableness of the officers' conduct in light of the surrounding circumstances and their suspicions." Id. (citing United States v. Luqman, 522 F.3d 613, 616–17 (6th Cir. 2008)).

Furthermore,

> [t]o justify a pat-down search during a Terry stop the Fourth Amendment requires a reasonable belief that the suspect is armed and dangerous; likewise, for the use of handcuffs during a Terry stop, the Fourth Amendment requires some reasonable belief that the suspect is armed and dangerous or that the restraints are necessary for some other legitimate purpose, evaluated on the facts of each case.

Bennett, 410 F.3d at 836; see also Houston v. Doe, 174 F.3d 809, 815 (6th Cir. 1999). While a police officer may rely on their experience and training in concluding that a person involved in drug trafficking is likely to be armed, there must first be "some corroboration that particular individuals are involved in dealing drugs before [a court will uphold] a frisk for weapons." United States v. Noble, 762 F.3d 509, 524 (6th Cir. 2014). Finally, moving a defendant during a Terry stop does not necessarily convert the stop into an arrest. Florida v. Royer, 460 U.S. 491, 504 (1983) ("[T]here are undoubtedly reasons of safety and security that would justify moving a suspect from one location to another during an investigatory detention. . . .").

Based on the facts here, the Court finds that the officers' conduct was "reasonably related in scope to the circumstances that justified the interference in the first place." Campbell, 549 F.3d at 372. The Court begins its analysis with Lieutenant Pruitt's initial seizure of Defendant before addressing whether Detective Mills had a legal basis to handcuff and frisk him.

To reiterate, Lieutenant Pruitt testified that, before he grabbed Defendant, he observed Defendant loitering on a vacant lot in a high crime neighborhood and then fleeing upon seeing

11

marked police cars arrive.  When Pruitt approached Defendant in the store, he smelled marijuana on Defendant's person.  Finally, Pruitt stated that he moved Defendant out of the store so that Defendant did not think the store owner coordinated with police and so that business inside the store could continue.  Thus, "in light of the surrounding circumstances," the Court finds that Lieutenant Pruitt acted reasonably when he grabbed Defendant and escorted him out of the store, and Pruitt's conduct did not give rise to a custodial arrest.

Next, the Court finds that Detective Mills did not exceed the scope of the permissible intrusion under a <u>Terry</u> stop when he handcuffed and frisked Defendant.  Mills testified that he witnessed Defendant flee a vacant lot in a high crime neighborhood and that he smelled marijuana emanating from Defendant before receiving him from Lieutenant Pruitt.  Mills also stated that he handcuffed Defendant because he was uncooperative and appeared to be searching for an escape route.  Finally, Mills testified that, in his experience, drug traffickers sometimes carry weapons and that he patted Defendant down for officer safety.

The Court finds that Detective Mills delineated specific facts to support a reasonable belief that Defendant was involved in drug trafficking.  Therefore, Detective Mills was justified in relying on his experience to believe that Defendant was armed and dangerous.  <u>See</u> <u>Noble</u>, 762 F.3d at 524.  In addition, Detective Mills testified that Defendant was being uncooperative and acting suspiciously.  Thus, under these facts, the Court finds that Detective Mills acted reasonably when he handcuffed and frisked Defendant.  Accordingly, Defendant's Objection is **OVERRULED**.

## **CONCLUSION**

Based on the foregoing, the Court **OVERRULES** Defendant's Objections to the Report.  To the extent that Defendant's Objections did not reach a finding or conclusion in the Report, the
12

Court finds no clear error. Therefore, the Court **ADOPTS** the Report, and Defendant's Motion to Suppress Evidence is **DENIED**.

**IT IS SO ORDERED,** this 23rd day of April, 2018.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
UNITED STATES DISTRICT JUDGE
